**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


John Knapp

    v.                              Civil No. 11-cv-491-PB

Christopher Kench, Acting
Commissioner, New Hampshire
Department of Corrections, et al.[1]


**REPORT AND RECOMMENDATION**


    Before the court is John Knapp's amended complaint (doc. no. 13), filed pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.  Knapp asserts First Amendment, Fourteenth Amendment, and RLUIPA claims against defendant prison officials in their individual and official capacities.  Because Knapp is a prisoner, the matter is before the court for preliminary review to determine if the complaint states any claim upon which relief might be granted.  See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

---

[1]In addition to Kench, Knapp has named New Hampshire State Prison ("NHSP") Chaplain James Daly and NHSP Warden Richard Gerry as defendants to this action.

**Standard of Review**

Under LR 4.3(d)(2), when an incarcerated plaintiff
commences an action pro se, the magistrate judge conducts a
preliminary review.  The magistrate judge may issue a report and
recommendation after the initial review, recommending that the
complaint be dismissed, if the court lacks subject matter
jurisdiction, the defendant is immune from the relief sought,
the complaint fails to state a claim upon which relief may be
granted, the allegation of poverty is untrue, or the action is
frivolous or malicious.  See LR 4.3(d)(2) (citing 28 U.S.C.
§ 1915A and Fed. R. Civ. P. 12(b)(1)).  In conducting a
preliminary review, the magistrate judge construes pro se
pleadings liberally, to avoid inappropriately stringent rules
and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S.
89, 94 (2007) (per curiam).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face.  See Ashcroft v.
Iqbal, 556 U.S. 662, 678-80 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  The second part of the test requires the court to treat as true all non-conclusory factual allegations, even if "seemingly incredible," and to consider those allegations along with all reasonable inferences drawn therefrom, construed in plaintiff's favor, in determining if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

3

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 566 U.S. at 679 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Background

John Knapp is an inmate at the New Hampshire Department of Corrections ("DOC").  Knapp, who is Muslim, obtained a religious preference card to that effect from the DOC in February 2009, meaning that he is recognized as a follower of Islam by the DOC. Knapp alleges that since he obtained his religious preference card, no Muslim services have taken place at the New Hampshire State Prison ("NHSP").[2]

---

[2]In his complaint, Knapp specifically complains about the deprivation of Muslim services in the NHSP facility in Concord. It appears that Knapp has since been moved to the Northern New Hampshire Correctional Facility ("NCF") in Berlin.  See Doc. No. 10 (change of address filed January 9, 2012).  To the extent Knapp seeks injunctive relief, or seeks redress for the denial of Muslim services at the NCF, he must first move to amend his

Knapp alleges that according to the Qur'an, all Muslims are required to participate in a weekly religious service called Jum'ah.  Jum'ah is a group worship ceremony, led by an Imam, that occurs every Friday afternoon.  During Jum'ah Muslims pray and "rejoice" in congregation.  Knapp states that attendance at Jum'ah is mandatory, and cannot be made up if it is missed. Jum'ah, according to Knapp's complaint, is the central religious ceremony of the Islamic faith, and by not attending weekly Jum'ah services, Knapp claims to risk divine punishment.

Beginning in November 2009, Knapp filed numerous complaints with NHSP Chaplain James Daly regarding the lack of Jum'ah services at the NHSP.  DOC policy requires that all religious group worship be led either by a chaplain or by an approved religious volunteer ("ARV").  Daly responded to Knapp's complaints by stating that Jum'ah services would be permitted at the NHSP when an ARV is found to lead those services.

Dissatisfied with Daly's response, Knapp filed five separate grievances with NHSP Warden Richard Gerry between November 15, 2009, and March 13, 2011.  Gerry denied Knapp's grievances and did nothing to remedy Knapp's lack of access to Jum'ah services.  Knapp filed grievances with Acting DOC

complaint to add factually supported claims against defendants whom he alleges have caused the deprivation of his rights at that facility.

Commissioner Christopher Kench on April 15, 2010, and March 18, 2011. Kench denied the grievances and did nothing to remedy Knapp's lack of access to Jum'ah services. Knapp's complaint can be read to assert that Daly, Gerry, and Kench each had the ability to make Jum'ah services available by obtaining an appropriate religious leader to run the services, or otherwise, but did not do so.

### The Claims

Upon review of the amended complaint (doc. no. 13), the court finds that it is appropriately construed to assert the following claims for relief:

> 1.   Knapp's First Amendment right to freely exercise his religion has been violated by the defendants' failure to provide Jum'ah services.

> 2.   Knapp's Fourteenth Amendment right to equal protection has been violated by the defendants' failure to provide Jum'ah services.

> 3.   Knapp's rights under RLUIPA have been violated by the defendants' failure to provide Jum'ah services.

### Discussion

I.   Free Exercise

The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v.

Wilkinson, 544 U.S. 709, 719 (2005).  This provision applies to the states under the Fourteenth Amendment.  See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6 n.4 (2004).

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to the free exercise of religion. Pell v. Procunier, 417 U.S. 817, 822 (1974); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)).  The First Amendment protects the exercise of a prisoner's sincerely held religious beliefs only to the extent that the exercise does not contravene prison regulations that are "reasonably related to legitimate penological interests."  See Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  A court evaluating a claim that a prison regulation interfered with an inmate's rights under the Free Exercise Clause must accord prison administrators significant deference in defining legitimate goals for the corrections system, and for determining the best means of accomplishing those goals.  See Overton v. Bazzetta, 539 U.S. 126, 132 (2003); Pell, 417 U.S. at 826-27; Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011). Under Turner, a court examining the constitutionality of a

regulation that restricts an inmate's First Amendment exercise
of religion examines four factors:

> (1) whether there is a valid, rational connection
> between the regulation and the legitimate government
> interest put forward to justify it; (2) whether
> alternative means to exercise the right exist; (3) the
> impact that accommodating the right will have on
> prison resources; and (4) the absence of alternatives
> to the prison regulation.

Kuperman, 645 F.3d at 74 (citing Turner, 482 U.S. at 89-90).

At this stage of the proceedings, without evidence to the
contrary in the record, the court finds that the denial of
access to Jum'ah services denies Knapp a central and essential
religious practice, and thereby improperly impinges upon his
First Amendment right to exercise his religion.  While further
development of the factual record may demonstrate that the DOC's
policy of permitting religious congregation only when a chaplain
or ARV is present is rationally related to legitimate
penological concerns, the court cannot make such a finding on
the limited facts asserted in Knapp's complaint.  See Sparks v.
Dennehy, No. 08-11437-PBS, 2009 WL 6490086, at *5 (D. Mass. Nov.
16, 2009) (order adopting report and recommendation) (complaint
alleging that plaintiffs were denied, inter alia, religious
services, stated claim upon which relief could be granted, where
record did not contain facts to allow court to assess actions of
corrections department).  Accordingly, in an order issued

8

simultaneously with this report and recommendation (hereinafter the "Simultaneous Order"), the court has directed that Knapp's First Amendment claim be served on defendants.

II.  RLUIPA

RLUIPA provides protection to institutionalized persons, including prison inmates, from burdens on their religious exercise.  See Bader v. Wrenn, 675 F.3d 95, 97 (1st Cir. 2012). RLUIPA's protection exceeds that provided by the Free Exercise Clause.  See id.  RLUIPA states that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

Id. (citing 42 U.S.C. § 2000cc-1(a)).  To state a claim under RLUIPA, plaintiff must demonstrate that he is confined to an institution, and that the government has imposed a substantial burden on his religious exercise.  See Crawford v. Clarke, 578 F.3d 39, 43 (1st Cir. 2009) (citing Spratt v. R.I. Dep't of Corrs., 482 F.3d 33, 38 (1st Cir. 2007)).  Once such a showing is made, the burden shifts to the government to demonstrate that the restriction is the least restrictive means by which a

legitimate and compelling governmental interest may be achieved. See Crawford, 578 F.3d at 43; Spratt, 482 F.3d at 38.

Knapp's status as an institutionalized person satisfies the first element of a RLUIPA claim.  As to the second element, Knapp has stated that, since February 2009, he has been denied access to Jum'ah, an important worship ceremony and requirement of his religion.  Knapp's assertion states an obvious burden on Knapp's religious exercise.

The statute does not define, and the First Circuit has not provided a definition of, what constitutes a "substantial burden."  The First Circuit has assumed, arguendo, however, that a substantial burden to religious exercise occurs when a challenged restriction "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Spratt, 482 F.3d at 38 (citing Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)).

The recent First Circuit decision in Bader concerned an orthodox Jewish DOC inmate who was transferred from a facility where religious services were regularly available to a facility where services were not available.  675 F.3d at 96.  Services were unavailable at the facility to which Bader was transferred due to the lack of ARVs able to travel to that facility.  See id.  The First Circuit found that Bader's religious exercise had

been substantially burdened but that the substantial burden was
not imposed by the government, as it was the lack of volunteers,
and not the transfer, that caused the burden.  See id. at 99.
Because the same volunteer policy applied at both the sending
and receiving institutions in Bader, and the government had
neither imposed other obstacles to Bader's practice nor
differentially applied the volunteer policy in the two
facilities, the court found that the lack of volunteers at the
second facility was not an act sufficiently attributable to the
state to violate RLUIPA.  See id. at 98-99.

At first blush, it would appear that the First Circuit's
Bader decision would apply to eliminate a RLUIPA claim in
Knapp's case.  See, e.g., id. at 99 ("Bader's disadvantages in
the Berlin prison depend importantly on proximate actions and
decisions not attributable to the government and . . . too
attenuated from the transfer decision to be considered
government imposed burdens").  Upon closer inspection, however,
Bader is distinguishable from the case at bar, rendering the
First Circuit's observations about proximate cause and
attenuation inapposite to Knapp's case.  First, Bader did not
specifically challenge the DOC's volunteer policy.  Rather, he
objected to the transfer and to the transfer's detrimental
impact on his religious practice.  See Bader v. Wrenn, No. 11-

cv-43-SM, 2012 DNH 076, 2012 WL 1393830, at *1 (D.N.H. Apr. 23, 2012) ("Bader claims that by transferring him to a prison facility that does not afford the same range of religious services and practices as are available in Concord, the State violated his rights under RLUIPA."). Knapp, however, is directly challenging the volunteer policy and its alleged effect of precluding group worship for Muslims.

Further, Bader did not claim to have been denied all access to religious exercise. The prison chaplain at the facility to which Bader was transferred arranged several visits from volunteers, including a cantor and two rabbinical students, and agreed to provide, or arrange for the provision of, religious items to enable Bader to observe certain religious holidays. See id., 2012 WL 1393830, at *1. The First Circuit, therefore, had no occasion in Bader to decide whether the volunteer policy was insulated from all future RLUIPA challenges. That is, the Bader decision does not appear to preclude all RLUIPA claims challenging a prison's volunteer policy.

The Fifth Circuit has pursued a case-by-case approach in evaluating RLUIPA claims challenging volunteer policies. See, e.g., Newby v. Quarterman, 325 F. App'x 345, 350 (5th Cir. 2009); Adkins v. Kaspar, 393 F.3d 559, 571 (5th Cir. 2004). Where the policy has had the effect of precluding a religious

practice, it has been found to impose a substantial burden, for the purposes of stating a RLUIPA claim. See, e.g., Newby, 325 F. App'x at 350 (volunteer policy coupled with total lack of Buddhist volunteers, entirely precluding Buddhist inmates from congregating to worship, imposed substantial burden on religious exercise actionable under RLUIPA); see also Sossamon v. Lone Star State of Tex., 560 F.3d 316, 334 (5th Cir. 2009) (cases in Fifth Circuit have found that neutrally applied policies do not impose substantial burden on religious exercise where "small number of available lay volunteers makes religious services less frequent . . . but still available on a somewhat regular basis" (punctuation omitted)), aff'd on other grounds, 131 S. Ct. 1651, 1663 (2011).

Finding no contrary First Circuit precedent, this court therefore finds that it is appropriate to follow the Fifth Circuit and apply a case-by-case approach to evaluate Knapp's RLUIPA claim. Knapp has asserted that there are no Muslim volunteers available to enable any sort of group worship, notwithstanding Daly's willingness to try to obtain volunteers, and that there is no prospect that the situation will change in the future. Under such circumstances, the court finds that the volunteer policy challenged in the instant case may violate Knapp's rights under RLUIPA, if such a policy is not the least

restrictive means by which the government can achieve a compelling state interest.  See 42 U.S.C. § 2000cc-19(a). Accordingly, the court finds that Knapp's allegations suffice, at this early stage of the proceedings, to assert a claim under RLUIPA upon which relief might be granted, and the court will direct that the claim proceed against defendants Daly, Wrenn, and Kench.

III. Equal Protection

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law."  U.S. Const. amend. XIV.  This provision requires states to treat similarly situated people in a similar manner.  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  Generally, to establish an equal protection claim, a plaintiff must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  See Hernandez v. New York, 500 U.S. 352, 360 (1991).

Knapp has not asserted any facts which would allow the court to reasonably infer that Knapp was treated differently

than any other similarly situated inmate to require the court to
evaluate the root of such differential treatment.  Specifically,
he has not stated that other religious groups are allowed to
congregate for worship with neither a chaplain nor an ARV.
Further, Knapp has not demonstrated that any defendant in this
action discriminated against him in any manner on the basis of
his religion.  While Daly has been unable to procure a Muslim
ARV to lead Jum'ah services, he has made efforts to do so.
Knapp has therefore failed to state an equal protection claim
upon which relief might be granted.  Accordingly, the equal
protection claim should be dismissed.

IV.  <u>Official Capacity Claims</u>

    A.  <u>Free Exercise</u>

Knapp's claims asserting a violation of his First Amendment
right to free exercise arises under 42 U.S.C. § 1983, which
provides a cause of action to those seeking relief from state
actors who violate their rights under federal law.  <u>See</u> <u>Haywood</u>
<u>v. Drown</u>, 556 U.S. 729, 731 & n.1 (2009).  Knapp specifically
seeks damages and injunctive relief for the violations of his
First Amendment rights.

"[I]t is well settled," however, "that neither a state
agency nor a state official acting in his official capacity may

be sued for damages in a section 1983 action." Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009) (internal quotation marks and citation omitted).  The Eleventh Amendment bars retrospective actions for damages under section 1983 against an unconsenting state, state agency, or state officers acting in their official capacity.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither state nor agencies under its control may be subject to suit in federal court); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (Congress did not abrogate state's Eleventh Amendment immunity under section 1983).

New Hampshire has not waived its sovereign immunity for claims asserted under 42 U.S.C. § 1983.  Accordingly, Knapp's § 1983 claim for damages for alleged violations of his First Amendment right to the free exercise of his religion, asserted against defendants in their official capacities, should be dismissed.  Knapp's claims for damages under the First Amendment may proceed against the defendants in their individual capacities, and his claims for injunctive relief may proceed against the defendants in their official capacities, see Negron-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) ("the Eleventh Amendment does not bar claims for prospective

16

injunctive relief against state officials in their official capacity" (citing Ex parte Young, 209 U.S. 123, 159-60 (1908)).

      B.   RLUIPA

     Knapp has asserted his RLUIPA claims against defendants in their individual and official capacities.  The State's sovereign immunity precludes a claim for damages against defendants in their official capacities under RLUIPA.  See Sossamon v. Texas, 131 S. Ct. 1651, 1658-59 (2011).  Accordingly, the official capacity damage claims asserted under RLUIPA should be dismissed, but the claims for injunctive relief against officials in their official capacities may proceed.  See Kuperman, 645 F.3d at 79.

     As to Knapp's RLUIPA claims asserting that defendants are liable for damages in their individual capacities, the court notes that the First Circuit has expressly declined, in the absence of a specific challenge by prison officials, to rule on whether such damages are available under RLUIPA.  See id. at 79. Accordingly, at this stage of the proceedings, prior to service of the complaint upon the defendants, this court similarly declines to rule on the availability of an individual capacity claim under RLUIPA.  The court has therefore directed service of the RLUIPA claims against defendants in their individual and

official capacities, without comment on the potential merits of
any challenge to a personal capacity claim asserted under
RLUIPA.

## Conclusion

For the foregoing reasons, Knapp's equal protection claim
should be dismissed from this action.  Knapp's claims for
damages asserted against defendants in their official capacities
should also be dismissed as barred by the Eleventh Amendment.
In the Simultaneous Order, the court directs service of the
remaining claims against defendants in their individual and
official capacities.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on
appeal).

_____
Landya McCafferty
United States Magistrate Judge

May 14, 2012

cc:  John Knapp, pro se

LBM:jba